UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN L. MILLER,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>S. ACOSTA, ET AL.,<br><br>　　　　　Defendants. | Case No. CV 15-2285-GW (KK)<br><br>ORDER GRANTING MOTION TO DISMISS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND |

**I.**

**<u>INTRODUCTION</u>**

John L. Miller ("Plaintiff"), proceeding <u>pro se</u> and <u>in forma pauperis</u>, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants S. Acosta, E. Henry, S. Lopez, and Abdul Wahab Omeira ("Defendants") alleging violations of Plaintiff's First Amendment rights to free exercise of religion and freedom from retaliation, and Fourteenth Amendment right to freedom from religious discrimination. Defendants filed a Motion to Dismiss arguing the Complaint fails to state a claim and Defendant Acosta is entitled to qualified immunity on Plaintiff's free exercise clause claim. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED with leave to amend.

## II.

## **PROCEDURAL HISTORY**

On March 12, 2015, Plaintiff, an inmate at California State Prison – Los Angeles County ("CSP-LAC"), constructively filed[1] a Complaint pursuant to Section 1983 against Defendants in their individual capacity. Dkt. 1, Compl.; Dkt. 3, Supporting Facts. The Complaint sets forth the following seven claims:

- Claim One: Defendant Acosta violated Plaintiff's First Amendment right to free exercise of religion by "intentionally and illegitimately" denying Plaintiff his approved religious meal on May 1, 2, 21, 22, 25, 29, and 31, 2013.

- Claim Two: Defendant Acosta violated Plaintiff's Fourteenth Amendment right to equal protection when he discriminated against inmates on the Religious Meat Alternative ("RMA") diet, including Plaintiff, by serving them rotten bananas, while serving cantaloupe to inmates on the regular diet.

- Claim Three: Defendant Henry violated Plaintiff's First Amendment right to be free from retaliation when he submitted a CDC 128B chrono alleging Plaintiff failed to pick up his RMA meal on October 5, 2013 in retaliation for Plaintiff filing grievances against defendant Acosta.

- Claim Four: Defendant Henry violated Plaintiff's First Amendment right to free exercise of religion by submitting a false CDC 128B chrono alleging Plaintiff failed to pick up his RMA meal on October 5, 2013, which resulted in Plaintiff being removed from the RMA program.

- Claim Five: Defendant Lopez violated Plaintiff's First Amendment right to be free from retaliation when he submitted a CDC 128B chrono alleging Plaintiff failed to pick up his RMA meal on October 7, 2013 in retaliation for Plaintiff filing grievances against defendant Acosta.

---

[1] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to § 1983 suits filed by pro se prisoners").

- Claim Six: Defendant Lopez violated Plaintiff's First Amendment right to free exercise of religion by submitting a false CDC 128B chrono alleging Plaintiff failed to pick up his RMA meal on October 7, 2013, which resulted in Plaintiff being removed from the RMA program.
- Claim Seven: Defendant Omeira violated Plaintiff's First Amendment right to free exercise of religion by improperly removing Plaintiff from the RMA program from December 11, 2013 to January 18, 2014 without first interviewing Plaintiff as required.

Dkt. 1. Plaintiff seeks nominal, compensatory, and punitive damages. Id. at 1.

On September 27, 2018,[2] Defendants filed the instant Motion to Dismiss. Dkt. 27. On January 22, 2019, Plaintiff constructively filed an Opposition. Dkt. 39. On February 8, 2019, Defendants filed a Reply. Dkt. 40. The matter thus stands submitted.

### III.
### **ALLEGATIONS IN THE COMPLAINT**

Plaintiff alleges that in January 2013 he converted to Modern Wicca, which requires the consumption of only "natural foods" in order to be "in harmony with nature and positive, natural energies." Dkt. 3, ¶¶ 2, 11.

On February 28, 2013, Plaintiff submitted an application for participation in the RMA program to the CSP-LAC chaplain, defendant Omeira, who was in charge of the RMA program. Id. ¶¶ 10, 11. On March 13, 2013, defendant Omeira approved Plaintiff's application. Id. ¶ 12.

In April 2013, a chapel clerk provided Plaintiff with a photocopied list of inmates approved to participate in the RMA program as of April 16, 2013 and told Plaintiff he could use the list in lieu of a Religious Diet Card to get his RMA meals until Plaintiff received his Religious Diet Card. Id. ¶¶ 13-14. Thereafter, Plaintiff

---

[2] This action was transferred to the undersigned United States Magistrate Judge on April 25, 2018. Dkt. 7. On May 8, 2018, the Court ordered service of the Complaint by the United States Marshal Service. Dkts. 8, 9.

used the list to obtain his RMA substitute meals at breakfast and lunch without incident. Id. ¶¶ 15-16. Plaintiff also used the list at dinner without incident except when the Correctional Supervising Cook, defendant Acosta, was working. Id. ¶ 17. Plaintiff alleges defendant Acosta denied Plaintiff his RMA meal on May 1, 2, 21, 22, 25, 29, and 31, 2013 on the grounds Plaintiff did not have a Religious Diet Card, even though defendant Acosta had a complete list of inmates approved to participate in religious diet programs. Id. ¶¶ 18-23.

On May 8, 2013, Plaintiff filed a grievance against defendant Acosta alleging he had improperly denied Plaintiff his RMA meals. Id. Ex. A. On June 6, 2013, defendant Acosta's supervisor interviewed Plaintiff regarding Plaintiff's May 8, 2013 grievance and told Plaintiff he had instructed defendant Acosta to give inmates their religious diet meals if they were on the approved religious diet list. Id. ¶ 24.

On July 18, 2013, defendant Acosta "oversaw the serving of a slice of cantaloupe to those inmates on the regular diet and the serving of a half-rotten banana to those inmates on the RMA diet." Dkt. 3 ¶ 27. Because the "sole commonality among the inmates on the RMA diet was that they were all non-Christians", Plaintiff alleges defendant Acosta discriminated against inmates in the RMA program, including Plaintiff, because they were non-Christian. Id. ¶¶ 30, 31.

On August 1, 2013, Plaintiff filed a grievance against defendant Acosta alleging he discriminated against Plaintiff on the basis of his religion by serving rotten bananas to the RMA program inmates. Id. ¶ 34, Ex. C. On August 28, 2013, defendant Acosta's supervisor interviewed Plaintiff regarding Plaintiff's August 1, 2013 grievance, and shortly thereafter defendant Acosta was reassigned to a different kitchen facility. Id. ¶ 37.

After defendant Acosta was reassigned, substitute Correctional Supervising Cooks, including defendants Henry and Lopez, would "fill in" for defendant Acosta in Plaintiff's unit and defendant Acosta would stop by to visit with them "every few days." Dkt. 3 ¶ 38. On October 16, 2013, defendants Henry and Lopez each

4

submitted CDC 128-B General Chronos against Plaintiff for religious diet non-compliance (the "Non-compliance Chronos") stating Plaintiff failed to pick up his RMA meals on October 5 and 7, 2013. Id. ¶¶ 39, 40, Ex. D. Plaintiff alleges defendants Henry and Lopez intentionally falsified the Non-compliance Chronos because as Plaintiff's supervisors, defendants Henry and Lopez "should have known" that Plaintiff was working in the dining room on October 5 and 7, 2013 and therefore "they knew" that Plaintiff would have eaten at the "shortline" and would not have been permitted to pick up his RMA meal during the "general feeding" on those dates. Id. ¶ 49. Plaintiff alleges defendants Henry and Lopez violated Plaintiff's right to free exercise of his religion because they knew two Non-compliance Chronos would result in Plaintiff being removed from the RMA program. Id. In addition, Plaintiff alleges defendants Henry and Lopez submitted the false Non-compliance Chronos in retaliation for Plaintiff having filed grievances against their co-worker defendant Acosta. Id. ¶¶ 49, 56.

Plaintiff alleges defendant Omeira removed Plaintiff from the RMA program without interviewing Plaintiff because "he was deliberately indifferent to prisoner rights and to legal and regulatory requirements insofar as they are beneficial to prisoners." Dkt. 3 ¶ 53. On or about December 11, 2013, Plaintiff alleges he "found out" about his removal from the RMA program. Id. ¶ 54. On January 18, 2014, Plaintiff was reinstated in the RMA program. Id. ¶ 55.

## IV.

## **STANDARD OF REVIEW**

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely

5

conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and the Court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If the court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). If, however, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

///

///

# V.

# DISCUSSION

## A. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE OF RELIGION CLAIMS IS GRANTED

Plaintiff alleges his right to free exercise of religion was violated by: (1) defendant Acosta denying Plaintiff his RMA meals on the pretext that Plaintiff did not have his Religious Diet Card (Claim One); (2) defendants Henry and Lopez submitting Non-compliance Chronos knowing it would result in Plaintiff's removal from the religious meal program (Claims Four and Six); and (3) defendant Omeira improperly removing Plaintiff from the religious meal program (Claim Seven).

### 1. Applicable Law

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not "rationally related to legitimate penological interests." See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-50, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987); Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones, 791 F.3d at 1031-33 (a "substantial burden" must be "more than an inconvenience on religious exercise") (citations omitted).

To determine whether a prison official's actions were a reasonable - rather than an "exaggerated" - response to a legitimate penological interest, courts consider four factors, specifically "(1) Whether there is a valid, rational connection between the prison [official's challenged conduct] and the legitimate governmental interest put

7

forward to justify it; (2) Whether there are alternative means of exercising the right that remain open to prison inmates; (3) Whether accommodation of the asserted constitutional right will impact . . . guards and other inmates, and [ ] the allocation of prison resources generally; and (4) Whether there is an 'absence of ready alternatives' versus the 'existence of obvious, easy alternatives.'" Shakur, 514 F.3d at 884 (quoting Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 2257, 96 L. Ed. 2d 64 (1987), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq.) (other citation and internal quotation marks omitted).

"Plaintiff must allege conscious or intentional acts that burden his free exercise of religion." Lewis v. Mitchell, 416 F. Supp. 2d 935, 944 (S.D. Cal. 2005) (holding negligence is insufficient to state a valid Section 1983 claim for the violation of free exercise rights); see also Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1214 (9th Cir. 2017) (Bybee, J., concurring) ("[I]t is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights.").

**2. Defendant Acosta Is Entitled To Qualified Immunity On Plaintiff's First Amendment Free Exercise Of Religion Claim**

**a. Additional Applicable Law – Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). On a motion to dismiss, the Court must accept the allegations of the complaint as true when determining whether a defendant is entitled to immunity. Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal [pursuant to Rule 12(b)(6)] before the

commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 739, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), and "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken,'" Pearson, 555 U.S. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)). "Qualified immunity protects an officer who makes a decision that, even if constitutionally deficient, is based on a reasonable misapprehension of the law governing the circumstances he confronted." Rogers v. Giurbino, No. 11-CV-560 WQH (RBB), 2016 WL 8578589, at *14 (S.D. Cal. July 22, 2016), report and recommendation adopted, No. 11-CV-560 WQH (RBB), 2016 WL 4651244 (S.D. Cal. Sept. 7, 2016), aff'd, 731 F. App'x 722 (9th Cir. 2018) (citing Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004)); see also Grossman v. City of Portland, 33 F.3d 1200, 1209-10 (9th Cir. 1994) (holding "the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional" unless the statute was "so obviously unconstitutional as to require a reasonable officer to refuse to enforce it").

    **b.**  **Analysis**

In Claim One, Plaintiff alleges defendant Acosta violated his right to free exercise of religion by denying Plaintiff his RMA meals on the pretext that Plaintiff

did not have his Religious Diet Card. However, even assuming defendant Acosta violated Plaintiff's First Amendment right to free exercise when he denied Plaintiff his RMA meal on May 1, 2, 21, 22, 25, 29, and 31, 2013,[3] defendant Acosta is entitled to qualified immunity. Plaintiff acknowledges defendant Acosta denied him the RMA meals on the basis of Title 15 of the California Regulations Code Section 3054.4(b), which required the chaplain to provide each eligible inmate with a Religious Diet Card. Dkt. 3, ¶ 21. Thus, defendant Acosta reasonably inferred that any inmate eligible for an RMA meal would possess a Religious Diet Card.[4] Moreover, there is no allegation that defendant Acosta had any reason to know the chaplain was not promptly providing eligible inmates with Religious Diet Cards. Therefore, it was reasonable for defendant Acosta to believe he was not violating clearly established law by requiring Plaintiff to present a Religious Diet Card.

Hence, defendant Acosta is entitled to qualified immunity based on his reasonable interpretation of the "law governing the circumstances he confronted." See Rogers, 2016 WL 8578589, at *14. Accordingly, Plaintiff's First Amendment Free Exercise claim against defendant Acosta is dismissed.

---

[3] Defendants do not argue Plaintiff failed to state a Free Exercise clause claim against defendant Acosta. Therefore, for purposes of this order, the Court will assume without deciding that there was a violation. See L.R. 7-12.

[4] Defendants also request judicial notice of Section 54080.14 of the California Department of Corrections and Rehabilitation's Department Operations Manual (2013) required inmates to "[s]how their Religious Diet Card obtained from the Chaplain or designee when receiving a religious meal." Dkt. 27-1. However, Plaintiff disputes whether Ex. A of the Request for Judicial Notice is an accurate copy of the Operations Manual in May 2013. Dkt. 39. Defendants cite Brown v. Valoff, 422 F.3d 926, 931 (9th Cir. 2005) for the position that CDCR Operations Manuals are proper subjects of judicial notice. Dkt. 27-1. However, the version of the Operations Manual was not in dispute in Brown. Therefore, the Court DENIES Defendants' Request for Judicial Notice.

In addition, Defendants argue in their Reply that Title 15 of the California Regulations Code Section 3054.4(c), which requires inmates to "show their Religious Diet Card when receiving their approved religious diet", was in effect in May 2013. Dkt. 40 at 5. However, it is unclear from Defendants' briefing what legislative history they are reviewing, because the Court is unable to locate any notation in the "history" section of Section 3054.4 that specifies when subsection (c) was amended.

### 3. Plaintiff Fails To Sufficiently Allege A First Amendment Free Exercise Claim Against Defendants Henry And Lopez

In Claims Four and Six, Plaintiff alleges defendants Henry and Lopez violated his right to free exercise of religion by submitting Non-compliance Chronos stating Plaintiff failed to pick up his RMA meals on October 5 and 7, 2013, which resulted in Plaintiff being removed from the RMA program. Plaintiff alleges defendants Henry and Lopez "should have known" that Plaintiff was working in the dining room on those two days and, therefore, knew their Non-compliance Chronos for religious diet non-compliance were false. Id. ¶ 49. However, Plaintiff's allegation regarding what defendants Henry and Lopez "should have known" shows they were at most negligent in preparing the Non-compliance Chronos, but fails to allege a conscious or intentional act necessary to support a Section 1983 claim for the violation of Plaintiff's free exercise rights. See Lewis, 416 F. Supp. 2d at 944. Therefore, Plaintiff fails to state a claim for violation of the First Amendment Free Exercise clause against defendants Henry and Lopez.

### 4. Plaintiff Fails To Sufficiently Allege A First Amendment Free Exercise Claim Against Defendant Omeira

In Claim Seven, Plaintiff alleges defendant Omeira improperly removed him from the religious diet program because he "was deliberately indifferent to prisoner rights and to legal and regulatory requirements insofar as they are beneficial to prisoners." Dkt. 3 ¶ 53. Plaintiff does not dispute defendant Omeira's authority to remove him from the program if the Non-compliance Chronos had been accurate. Rather, Plaintiff alleges defendant Omeira had an administrative obligation under Title 15 of the California Regulations Code Section 3054.5(b) to interview Plaintiff after receipt of the Non-compliance Chronos from defendants Henry and Lopez before removing Plaintiff from the religious diet program.

Defendant Omeira's failure to comply with Title 15 of the California Regulations Code Section 3054.5(b) is not a constitutional violation. Garcia v. L.A.

Cty. Sheriff Dep't, No. CV1508329DOCDFM, 2017 WL 275597, at *6 (C.D. Cal. Jan. 19, 2017) ("Section 1983 offers no redress for a violation of a state law or state-mandated procedure that does not amount to a constitutional violation." (citing Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997))). Moreover, the Court does not accept Plaintiff's conclusory allegation of defendant Omeira's state of mind. See In re Gilead Scis. Sec. Litig., 536 F.3d at 1055 (noting the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Therefore, Plaintiff fails to state a claim for violation of the First Amendment Free Exercise clause against defendant Omeira.

**B.     PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE FIRST AMENDMENT RETALIATION CLAIMS AGAINST DEFENDANTS HENRY AND LOPEZ**

In Claims Three and Five, Plaintiff alleges defendants Henry and Lopez retaliated against Plaintiff for filing grievances against defendant Acosta by submitting CDC 128B Chronos that Plaintiff failed to pick up his religious meal knowing that would result in Plaintiff's removal from the religious diet program.

**1.     Applicable Law**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that [a prison official] took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (observing prisoner "must show that there were no legitimate correctional purposes motivating the actions he complained of").

"Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Watison, 668 F.3d at 1114 (9th Cir. 2012); Pratt, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent[.]").

### 2. Analysis

Plaintiff alleges defendants Henry and Lopez prepared the Non-compliance Chronos on October 16, 2013 in retaliation for Plaintiff having filed grievances against defendant Acosta in May, July, and August 2013. However, there are no allegations defendant Henry and Lopez were aware of the grievances or the alleged reason for defendant Acosta's reassignment. Therefore, the chronology of events is insufficient for the Court to reasonably infer the adverse action taken by defendants Henry and Lopez (i.e. preparation of the Non-compliance Chronos) was *because of* the grievances Plaintiff filed against defendant Acosta. Accordingly, Plaintiff fails to state a claim for retaliation in violation of the First Amendment against defendants Henry and Lopez.

## C. PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE A FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM AGAINST DEFENDANT ACOSTA

In Claim Two, Plaintiff alleges defendant Acosta violated Plaintiff's Fourteenth Amendment right by discriminating against Plaintiff based on his religion when he served RMA program inmates half-rotten bananas, while serving cantaloupe to regular diet inmates.

### 1. Applicable Law

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a Section 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, the plaintiff must allege facts showing that the

defendants acted with the intent to discriminate against him based on his membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that he was treated differently from persons similarly situated, see City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). See also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998) ("[A] plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.").

"Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). The Fourteenth Amendment is not violated by unintentional conduct that may have a disparate impact. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977); Washington v. Davis, 426 U.S. 229, 239, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995) ("[T]he Equal Protection clause requires proof of discriminatory intent or motive."). Absent "a clear pattern, unexplainable on grounds other than [protected class], . . . impact alone is not determinative, and the Court must look to other evidence" to determine whether "invidious discriminatory purpose was a motivating factor." Vill. of Arlington Heights, 429 U.S. at 266.

### 2. Analysis

Here, Plaintiff alleges one instance where RMA program inmates received less desirable fruit.[5] First, there is no direct evidence of defendant Acosta's state of mind. Therefore, the only evidence of discriminatory purpose is the disparate impact on RMA program inmates. However, there is no allegation of a pattern showing that RMA program inmates consistently received less desirable fruit at meal times than other inmates. Where there is no clear pattern of discrimination, a single instance of disparate impact alone is insufficient to state a cause of action for religious

---

[5] The Court notes it is not entirely clear RMA program inmates are a protected class.

14

discrimination in violation of the Fourteenth Amendment. Vill. of Arlington Heights, 429 U.S. at 266. Hence, Plaintiff fails to state a claim for religious discrimination against defendant Acosta.

## VI.

## **ORDER**

IT IS THEREFORE ORDERED (1) Defendants' Motion to Dismiss is GRATED; and (2) the Complaint is DISMISSED with leave to amend as set forth below.

Plaintiff is advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if plaintiff asserts a claim in his First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1. Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. **The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.**

If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint," it

must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint. In addition, the First Amended Complaint must be complete without reference to the Complaint, or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat all preceding complaints as nonexistent. Id. **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint.** Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261. Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

2. Alternatively, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.**

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint will result in this action being dismissed with prejudice for failure**

**to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated: February 26, 2019

/s/ Kenly Kiya Kato
HONORABLE KENLY KIYA KATO
United States Magistrate Judge